IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALVIN HEMPSTEAD, # B-31386, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-278-JPG |
| | ) | |
| THOMAS A SPILLER, | ) | |
| JEREMY NORMAN, | ) | |
| MICHAEL EDWARDS, | ) | |
| J. MILLER, | ) | |
| C/O ROELANDT, | ) | |
| NURSE FARRIS, | ) | |
| NURSE HILL, | ) | |
| NURSE LONG, | ) | |
| RECTOR, | ) | |
| and DR. SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), where he is serving a six-year sentence. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that Defendants have retaliated against him, housed him under unconstitutional conditions, and were deliberately indifferent to his medical needs.

According to the complaint, Plaintiff was transferred from Vienna Correctional Center to Pinckneyville on February 6, 2014 (Doc. 1 p. 6). He was on segregation status because he had been charged with a disciplinary infraction for assaulting a staff member at Vienna, a charge he claims was false. Defendant Miller handled Plaintiff's entry to Pinckneyville, and had been informed of the reason for Plaintiff's transfer. Defendant Miller called out to other guards, including Defendant Roelandt, "we got us a staff assaulter here." *Id*. Plaintiff claims that on the

basis of his identification as an alleged "staff assaulter," Defendant Miller decided to "retaliate" against Plaintiff and punish him by knowingly placing him in an obviously contaminated cell.

When Defendant Roelandt saw where Defendant Miller was going to house Plaintiff, he cautioned Defendant Miller not to put him in the cell that they both knew was contaminated. Defendant Miller responded, "Plaintiff is 'tough' he's a f***ing staff assaulter" (Doc. 1, p. 6). Both Defendant Miller and Roelandt then proceeded to place Plaintiff in the cell anyway.

Plaintiff soon began to experience extreme itching and irritation on his scalp (Doc. 1, pp. 7, 12-13). The first night, he had no mattress and was forced to sleep on the bare bunk. Defendants Miller and Roelandt then deliberately gave him a dirty mattress, as well as dirty sheets and pillowcase. Plaintiff's scalp continued to itch so badly that his scratching drew blood. He remained in that cell under those conditions for over a month (Doc. 1, p. 13). He was released from segregation on May 13, 2014. The itching and irritation continued, and he attempted to treat his condition on his own, with cream and soap. However, his symptoms continued to worsen. *Id*.

On May 30, 2014, Plaintiff saw Defendant Nurse Farris, and explained his consistent pain, itching and scratching. However, she "totally disregarded" his plea for help. At some point, Plaintiff learned that he had caught a fungus infection (Tinea) (Doc. 1, p. 7). Over the next few months, Plaintiff was interviewed by the other medical-provider Defendants. He saw Defendant Nurse Hill on July 30; Defendant Nurse Long on August 14; Defendant Nurse Practitioner Rector on August 18; and Defendant Dr. Shah on August 22, 2014. On each of these occasions, Plaintiff asserts that each Defendant examined him and was informed of his symptoms, yet "totally disregarded [his] plea and cry for help." *Id*. He specifically notes that Defendant Farris wrote on May 30 that the tinea fungus was "questionable," and that Defendant

Shah "chose to diagnose/treat the injury without an exam to directly clarify the medical issue" (Doc. 1, p. 8). As a result of the denial of treatment and the delay in allowing him to be "properly examined by a doctor," Plaintiff continued to suffer pain, and now has permanent scar tissue on his scalp. *Id*.

Plaintiff attaches several pages of medical records documenting his visits to the health care providers (Doc. 1, pp. 16-23). These reflect that on May 30, Plaintiff was given hydrocortisone cream, and "possible tinea" was noted (Doc. 1, p. 16). The August 14 notes (signed by Defendant Long) indicate Plaintiff would be referred to the doctor, and that he had earlier been treated with anti-fungal cream and Selsun Blue shampoo (Doc. 1, p. 21). Defendant Rector's notes on August 18 indicate he would see the M.D. regarding "concerns about 'permanent disfiguration' to [his] scalp from fungus" (Doc. 1, p. 22). The August 22 notes indicate Plaintiff was seen on "MD Call Line" and was given Selsun shampoo (Doc. 1, p. 23).

Plaintiff concludes that each of the medical Defendants knowingly denied him the right to adequate medical care because he had been stigmatized as a "staff assaulter" (Doc. 1, p. 8). He seeks compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted

if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment claim against Defendants Miller and Roelandt, for knowingly housing Plaintiff in a contaminated, unsanitary cell which put his health at risk and caused him to become physically ill;
>
> **Count 2:** Eighth Amendment claim against Defendants Farris, Hill, Long, Rector, and Shah for deliberate indifference to Plaintiff's serious medical needs, in that they failed to treat and/or delayed treatment of his scalp condition;
>
> **Count 3:** First Amendment retaliation claim against all Defendants, for deliberately mistreating Plaintiff on the basis that he had been labeled a "staff assaulter."
>
> Counts 1 and 2 shall, at this juncture, proceed for further review. However, Count 3 fails

to state a claim upon which relief may be granted, and shall be dismissed. Further, Defendants Spiller, Norman, and Edwards (warden and assistant wardens at Pinckneyville) shall be dismissed from the action.

**Count 1 – Unconstitutional Conditions of Confinement**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

In order to prevail on a conditions-of-confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the intent with which the acts or practices constituting the alleged punishment are inflicted; in other words, the

state of mind of the defendant.  *Jackson*, 955 F.2d at 22; *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, this is deliberate indifference to inmate health or safety; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

In the instant case, Plaintiff outlines facts indicating that Defendants Miller and Roelandt deliberately placed him in the contaminated cell as punishment, knowingly gave him an unsanitary mattress and bedding, and allowed him to remain in those conditions for over a month.  He may therefore proceed with his Eighth Amendment claim against Defendants Miller and Roelandt in **Count 1**.

**Count 2 – Deliberate Indifference to Serious Medical Needs**

In order to state an Eighth Amendment claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or

unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques). Treatment that proves to be ineffective does not, by itself, amount to a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth*, 532 F.3d at 679.

Here, Plaintiff describes a painful and irritating scalp condition that clearly required medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

Plaintiff's sweeping claim that Defendants Farris, Hill, Long, Rector, and Shah "totally disregarded" his condition and requests for medical attention is belied by the medical records he includes as exhibits to the complaint. They did not refuse to treat him. Nurse Farris gave him hydrocortisone cream on May 30. At some point before August 14 he evidently received anti-fungal cream and Selsun Blue shampoo. It appears that Defendant Long referred Plaintiff to the

doctor on August 14. He saw Defendant Shah on August 22, and was again given Selsun shampoo, according to that record.

While Plaintiff received some medical treatment, he may still be able to maintain an Eighth Amendment claim "if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). Further, a deliberate indifference claim may be stated where a medical provider persists in a course of treatment known to be ineffective or fails to order further testing, if warranted by the circumstances. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate indifference). And as noted earlier, a delay in treatment that allows a prisoner to continue to suffer may violate the Eighth Amendment.

At this stage, the Court cannot determine whether the measures taken by the medical Defendants in response to Plaintiff's condition amounted to deliberate indifference, constituted appropriate treatment within reasonable medical judgment, or fell somewhere in between. Further factual development is appropriate at this stage. Therefore, Plaintiff shall be allowed to proceed on his deliberate indifference claims in **Count 2** against Defendants Farris, Hill, Long, Rector, and Shah.

### Dismissal of Count 3 – Retaliation

Plaintiff asserts that his placement in the unsanitary cell by Defendants Miller and Roelandt was motivated by their desire to retaliate against him and punish him for allegedly assaulting a fellow prison staff member. Likewise, he claims that the medical Defendants failed to properly treat him in order to retaliate against him for being a "staff assaulter."

In the prison context, where an inmate alleges retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  The Plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

In Plaintiff's case, he clearly articulates that he was subjected to an adverse action (being placed in a contaminated cell) by Defendants Miller and Roelandt.  Likewise, a failure to provide proper medical treatment can be considered an "adverse action" in a retaliation claim.  However, Plaintiff's retaliation claim must fail, because the adverse actions were not triggered by any *protected* First Amendment activity on Plaintiff's part.  The alleged staff assault does not constitute protected activity – to the contrary, such behavior is outlawed by prison rules.  The Court at this stage accepts Plaintiff's assertion that he was falsely accused of this disciplinary infraction.  However, even assuming he was innocent, being charged with a conduct violation is not a "protected activity" that would support a First Amendment claim.  The same is true of the "staff assaulter" accusation – being given such a label is not a protected First Amendment activity on the part of the prisoner.

The fact that Defendants Miller and Roelandt discussed their belief that Plaintiff was a "staff assaulter" is plainly relevant to the subjective component of the Eighth Amendment claim in Count 1.  The "staff assaulter" label might also bear on the claims in Count 2, if any of the

medical providers knew of this background and acted upon it. However, the facts outlined in the complaint will not support a distinct First Amendment retaliation claim, because no protected activity is described. Accordingly, **Count 3** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**Dismissal of Defendants Spiller, Norman, and Edwards**

Other than including these Defendants in the case caption and in the list of parties, Plaintiff makes no further reference to them. He does not include any factual allegations whatsoever against Defendants Spiller, Norman, or Edwards in his statement of claim. He states only that each of them is "employed by the state as a state official" (Doc. 1, pp. 1-2).

Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, if Plaintiff assumes that the prison warden (Defendant Spiller) and/or assistant wardens (Defendants Norman and Edwards) are liable for damages simply because they are administrators who supervise the other Defendants, he is mistaken. The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). A defendant can only be held liable in a civil rights action if he or she was "personally responsible for the deprivation of a constitutional right." *Id.* Plaintiff does not allege that any of these Defendants had any involvement in his cell placement or in the decisions regarding his medical care. Accordingly, Defendants Spiller, Norman, and Edwards shall be dismissed from this action without prejudice.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 2) shall be referred to a United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

**Disposition**

**COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **SPILLER, NORMAN,** and **EDWARDS** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **MILLER, ROELANDT, FARRIS, HILL, LONG, RECTOR,** and **SHAH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: April 7, 2015**

                                     s/J. Phil Gilbert
                                     United States District Judge