IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALVIN HEMPSTEAD, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 3:15-cv-00278-MJR-RJD |
| JEFF MILLER, JEFF ROELANDT, SARAH FARRIS, MARCIA HILL, LADONNA LONG, ANGEL RECTOR, and VIPIN SHAH, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

On March 11, 2015, Plaintiff Calvin Hempstead, a former inmate with the Illinois Department of Corrections (IDOC), filed this civil rights lawsuit asserting that his Eighth Amendment rights were violated while he was at Pinckneyville Correctional Center ("Pinckneyville"). In February 2014, prison officials transferred Hempstead from Vienna Correctional Center ("Vienna") to Pinckneyville. Upon arriving at Pinckneyville, Hempstead states that he was placed in an unsanitary cell in the prison's disciplinary segregation unit and that he developed a rash on his scalp. Hempstead alleges that various employees of the Pinckneyville Health Care Unit failed to provide adequate medical treatment for the condition.

1

On July 7, 2015, Hempstead filed an amended complaint (Doc. 33). In Count I of the amended complaint, he asserts an Eighth Amendment conditions of confinement claim against IDOC employees Jeff Miller and Jeff Roelandt for knowingly placing him in the filthy cell in the prison's segregation unit. In Count II, Hempstead asserts an Eighth Amendment deliberate indifference to serious medical needs claim against Sarah Farris, Marcia Hill, Ladonna Long, Angel Rector and Vipin Shah for failing to provide adequate medical treatment for his scalp condition. Farris, Hill, Long, Rector and Shah work in the Pinckneyville Health Care Unit and are employed by Wexford Health Sources, Inc. ("Wexford"), a corporation that provides healthcare services to IDOC inmates.

Defendants now seek summary judgment. (Docs. 87 and 93). Hempstead did not respond to the motions for summary judgment, though he was notified of the potential consequences of failing to do so. *See* Doc. 89; ***Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (pro se litigants "entitled to notice of the consequences of failing to respond to a summary judgment motion")**. Hempstead was also notified that pursuant to Local Rule 7.1(c), the failure to file a response to a motion "may, in the Court's discretion, be considered an admission of the merits of the motion." For the following reasons, Defendants' motions for summary judgment are granted.

I. BACKGROUND

Plaintiff Calvin Hempstead was an inmate with IDOC from August 27, 2013, through September 4, 2015. (Affidavit of Chalene Hale, Doc. 88-1, p. 1). On February 6,

2

2014, Hempstead was transferred from Vienna to Pinckneyville for disciplinary reasons after he assaulted an IDOC staff member at Vienna. *Id*. Upon arriving at Pinckneyville, prison officials placed Hempstead in cell B-74 in the facility's segregation unit. *Id*. at p. 2. Hempstead resided in cell B-74 until February 23, 2014, when he was transferred to segregation cell A-69. *Id*. at p. 2. Hempstead remained in cell A-69 until he was transferred out of segregation on May 13, 2014. *Id*. at p. 2. After a few more stays in the Pinckneyville segregation unit in late 2014 and early 2015, Hempstead was released from IDOC custody in September 2015. *Id*. at p. 2.

Upon arriving at Pinckneyville, Hempstead was examined in the facility's Health Care Unit at 10:00 a.m. on February 6, 2014. (Doc. 94-2, p. 19). Hempstead's medical records state that he was wearing a brace on his right hand because he had suffered a fracture in the fourth metacarpal bone (the bone in the hand connected to the ring finger). *Id*. at pp. 19-20. After a few examinations for the hand issue in February and March 2014, Hempstead was examined for a scalp condition for the first time on May 30, 2014. (Doc. 94-3, p. 6). Defendant Sarah Farris, L.P.N., examined Hempstead on that date and observed a rash on Hempstead's scalp. *Id.* Hempstead told Nurse Farris that the rash developed approximately three weeks prior and that it was the first time he had experienced such a rash. *Id*. Nurse Farris diagnosed Hempstead as having either dermatitis or tinea. *Id*. After consulting with Defendant Dr. Vipin Shah, Nurse Farris prescribed Hempstead hydrocortisone cream and selsun lotion. *Id*. After the May 30, 2014, examination, Nurse Farris did not provide any additional treatment for Hempstead's scalp condition. (Farris Affidavit, Doc. 94-8, p. 2).

3

Hempstead's medical records indicate that he was next examined in the Health Care Unit on July 21, 2014. (Doc. 94-3, p. 7). Defendant Ladonna Long, L.P.N., examined Hempstead for complaints of knee and hand pain. There is no mention in the record of the visit that the two discussed Hempstead's scalp condition. *Id.* Hempstead's next medical appointment was scheduled for July 30, 2014. *Id.* at p. 8. However, the notes of Defendant Marcia Hill from that date state that Hempstead "became very angry" when he was informed that he would be required to provide a co-pay and that he refused treatment. *Id.* at p. 8.

Hempstead returned to the Health Care Unit on August 8, 2014, for complaints of knee pain. (Doc. 94-3, p. 9). The examining nurse referred Hempstead for a follow up appointment, and on August 12, 2014, Defendant Angel Rector, P.A., examined Hempstead. *Id.* at p. 10. Rector and Hempstead discussed his knee and hand issues, but there is no indication that they discussed the rash. *Id.* at p. 10. On August 14, 2014, Nurse Long examined Hempstead for the rash issue. (Doc. 94-3, p. 11). Hempstead told Nurse Long that he had an itchy rash all over the top of his head, and he suspected that the rash was caused by his unsanitary cell. *Id.* Hempstead was also upset that he was being seen by a nurse and not a doctor. *Id.* Long referred Hempstead for a follow-up examination, and on August 18, 2014, Defendant Rector again examined Hempstead. *Id.* at p. 12. P.A. Rector noted that Hempstead's scalp condition was stable but there were a few dark patches near the rash. *Id.* at p. 12. At the conclusion of the examination, P.A. Rector referred Hempstead to be seen by Dr. Shah. *Id.* at p. 12.

Dr. Shah examined Hempstead on August 22, 2014. *Id*. at p. 13. Dr. Shaw diagnosed Hempstead as having "tinea versicolor" and prescribed a selenium sulfate shampoo. *Id*. at p. 13. According to Dr. Shah's declaration attached to his motion for summary judgment, tinea versicolor "is a fungal infection of the skin and is caused by a type of yeast that naturally lives on human skin." (Doc. 94-9, p. 2). The condition is not contagious, but "acidic bleach from the growing yeast causes areas of skin to be a different color than the surrounding skin[.]" *Id*. Dr. Shah also states in his declaration that "[t]here was no epidemic of ring worm at Pinckneyville Correctional Center in 2014." *Id*. at p. 3. After the August 22, 2014, examination, there is no record of Hempstead making any further complaints about his scalp condition.

In addition to the healthcare Defendants, Hempstead asserts claims against IDOC correctional officers Jeff Miller and Jeff Roelandt. Attached to the IDOC Defendants' Motion for Summary Judgment are affidavits from Miller and Roelandt. Miller states in his affidavit that he has been a Correctional Officer at Pinckneyville since 1996. From February through May 2014, he was assigned to work in Pinckneyville's segregation unit. (Doc 88-3, p. 1). On February 6, 2014, Miller received notice from the Pinckneyville placement officer that Hempstead was to be assigned to a cell in the segregation unit. *Id*. at p. 2. Miller states that he did not observe Hempstead's cell to be contaminated, nor did he knowingly provide Hempstead with contaminated bedding. *Id*. at p. 2. Inmate workers clean the cells prior to having a new inmate assigned. *Id*. at p. 2. Furthermore, Hempstead never notified Miller that the cell was contaminated or unfit for human habitation. *Id*. at pp. 2-3.

Jeff Roelandt states in his affidavit that he has been a Correctional Officer at Pinckneyville since 2013. (Doc. 88-4, p. 1). Roelandt was also assigned to work in the Pinckneyville segregation unit from February through May 2014. *Id*. Roelandt has never been the placement officer at Pinckneyville, and he did not personally assign Hempstead to the cell. *Id*. Inmate workers deliver mattresses and bed linens to the inmates in the segregation unit. *Id*. Roelandt states in his affidavit that he did not knowingly provide Hempstead with contaminated bedding, nor did he knowingly place Hempstead in a cell contaminated with fungus or bodily fluids. *Id*. at p. 2.

II. ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure states, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When faced with a motion for summary judgment, the Court must examine the record in a light most favorable to the nonmoving party and all reasonable inferences are to be drawn in their favor. *Payne v. Pauley*, **337 F.3d 767, 770 (7th Cir. 2003).** At this point in the litigation "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).**

**A. IDOC Defendants Jeff Miller and Jeff Roelandt**

In Count I of the amended complaint, Hempstead asserts that Miller and Roelandt violated his Eighth Amendment rights by placing him in an unsanitary, contaminated cell that caused him to become physically ill. Prisoners have an Eighth Amendment right to "adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, **511 U.S. 825, 832 (1994)**. An Eighth Amendment violation occurs when a prisoner is subject to an objectively serious deprivation and the defendant prison officials were deliberately indifferent to the prisoner's situation. *Id*. **at 834**. The Supreme Court observed in *Hudson v. McMillan* that "extreme deprivations are required to make out a conditions-of-confinement claim … [and] only those deprivations denying the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, **503 U.S. 1, 9 (1992) (internal cite and quote omitted)**.

Here, Miller states in his affidavit that he did not observe Hempstead's segregation cell to be unfit for human habitation, nor did he knowingly provide Hempstead with contaminated bedding. Miller also states that inmate workers clean the segregation cells before a new inmate is placed in a cell. Additionally, Miller observed the interior of the cell and determined that it did not appear to have any physical characteristics that were different than any other cell in segregation at Pinckneyville in February 2014. Defendant Roelandt states in his affidavit that he did not knowingly provide Hempstead with contaminated bedding or a contaminated cell. Moreover, both Miller and Roelandt state in their affidavits that they did not personally

assign Hempstead to the specific segregation cells. Because Hempstead did not file a response in opposition to the Defendants' motions for summary judgment, there is no evidence countering Miller and Roelandt's assertions. The Court will therefore consider the facts presented in Miller and Roelandt's affidavits undisputed for the purposes of summary judgment. *See* **Fed. R. Civ. P. 56(e)**. The affidavits state that the segregation cells are regularly cleaned by inmate workers and that the two IDOC defendants did not knowingly place Hempstead in a contaminated cell. When these assertions are deemed undisputed, no reasonable jury could find that Miller and Roelandt were deliberately indifferent to Hempstead's conditions of confinement. As such, Miller and Roelandt are entitled to summary judgment.

### B. Wexford Defendants Sarah Farris, Marcia Hill, Ladonna Long, Angel Rector and Vipin Shah

In Count II of the amended complaint, Hempstead asserts an Eighth Amendment deliberate indifference to serious medical needs claim against Wexford Defendants Farris, Hill, Long, Rector and Shah. To establish an Eighth Amendment deliberate indifference to serious medical needs claim, the plaintiff must show: (1) that he suffered from a serious medical need; and (2) that the defendants were deliberately indifferent to it. ***Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976))**. Not all medical conditions qualify as "serious." A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." ***Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)**. Lack of treatment for lesser

8

conditions, such as sniffles or a mild headache, will not implicate the Eighth Amendment. *Cooper v. Casey*, **97 F.3d 914, 916 (7th Cir. 1996).**

In addition to demonstrating that the medical condition was objectively serious, the plaintiff must also show that the defendants demonstrated "deliberate indifference" to the condition. "Deliberate indifference" is a state of mind where the prison official defendant "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, **511 U.S. at 837**. This is a higher level of wrongdoing than ordinary negligence, akin to criminal recklessness. *Id.* **at 836**. A plaintiff does not need to show that "he was literally ignored" to establish an Eighth Amendment claim. *Roe v. Elyea*, **631 F.3d 843, 858 (7th Cir. 2011)**. Deliberate indifference may be established by evidence that the defendant chose a "blatantly inappropriate" course of treatment or one that unnecessarily prolonged pain. *Petties v. Carter*, **836 F.3d 722, 730 (7th Cir. 2016)**.

As previously noted, Hempstead did not file a response in opposition to the Defendants' motions for summary judgment. As such, there is no affidavit countering the assertions of Farris, Hill, Long, Rector and Shah. The Court will therefore consider the facts presented in the declarations of the Wexford Defendants undisputed for the purposes of summary judgment. *See* **Fed. R. Civ. P. 56(e)**. Assuming that Hempstead's scalp rash was a serious condition, the record does not present evidence that could lead a reasonable juror to conclude that the Wexford Defendants were deliberately indifferent to Hempstead's scalp condition.

After arriving at Pinckneyville, the record shows that Hempstead first complained of his scalp condition on May 30, 2014, and he promptly was prescribed a

9

cream to treat it. The record does not indicate that the condition was discussed with the Wexford Defendants again until August 2014. When Hempstead complained to Defendant Long about the condition on August 14, 2014, he was referred to Defendant Rector. Defendant Rector examined Hempstead on August 18, 2014, and recommended that he be seen by Dr. Shah, who examined Hempstead on August 22, 2014. Dr. Shah treated Hempstead's condition at that time by giving him a selenium sulfate shampoo. Hempstead did not seek treatment for his scalp condition again after that appointment. (Docs. 94-3, 94-7, 94-8, 94-9, 94-10 and 94-11).

Although Hempstead arguably suffered from a serious medical need, no reasonable juror could find that any Wexford Defendant was deliberately indifferent to his condition. Hempstead was provided with multiple prescriptions to treat his rash, and he was referred to see a physician when he complained that the initial treatment was ineffective. After receiving the second treatment, Hempstead did not seek any further treatment from Defendants. No reasonable juror could conclude that Defendants chose a blatantly inappropriate course of treatment, prolonged Plaintiff's pain, or were otherwise deliberately indifferent to his medical needs. As such, the Wexford Defendants' motion for summary judgment shall be granted.

III. CONCLUSION

For all the above reasons, Defendants' motions for summary judgment (Docs. 87, 93) are **GRANTED**. The Clerk is directed to enter judgment in favor Defendants Jeff Miller, Jeff Roelandt, Sarah Farris, Marcia Hill, Ladonna Long, Angel Rector and Vipin

Shah and against Plaintiff Calvin Hempstead. As no claims remain before the Court, all pending motions are **DENIED as MOOT** and all settings herein are **CANCELED**.

    **IT IS SO ORDERED**.

    DATED: July 13, 2017

                                            ***s/ Michael J. Reagan***
                                            MICHAEL J. REAGAN
                                            **Chief Judge**
                                            **United States District Court**